**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-05-701(1) |
| | § | C.A. No. C-06-567 |
| RODOLFO HURTADO-PACO, | § | |
| | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER DISMISSING
MOTION  TO VACATE, SET ASIDE OR CORRECT SENTENCE,
AND ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Rodolfo Hurtado-Paco's ("Hurtado") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 121),[1] which was received by the Clerk on December 29, 2006.  The Court ordered the government to respond (D.E. 124), and the government filed a response in which it also moves for summary judgment, or alternatively, for dismissal. (D.E. 131-133.)  To date, Hurtado has not filed a reply.

As discussed in detail herein, Hurtado lists four separate claims in his motion, but a careful review of them reveals only three claims: (1) that the prosecution failed to disclose evidence favorable to Hurtado; (2) that his sentence was improper because it was outside out of the guidelines; and (3) that he was denied effective assistance of counsel

---

[1] Dockets entries refer to the criminal case, C-05-cr-424.

1

because his attorney pressured him to plead guilty.  His first two claims are subject to dismissal because he waived his right to file those claims.  His ineffective assistance claim, which arguably fall outside the scope of his waiver, fails on its merits.  For these reasons, the Court DENIES his § 2255 motion.  Additionally, the Court DENIES Hurtado a Certificate of Appealability.

## I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## II.  FACTS AND PROCEEDINGS

**A.      Summary of Offense[2]**

On October 23, 2005, Elias Soto-Nava was the driver and sole occupant of a Ford Focus that entered the U.S. Border Patrol Checkpoint in Falfurrias, Texas.  During the immigration inspection, Soto-Nava presented the agent with his resident alien card and the agent noticed that Soto-Nava's hand was shaking and he appeared nervous.  Soto-Nava informed the agent that the vehicle belonged to him and that he was traveling to Dallas, Texas.  A drug canine alerted to the engine compartment of Soto-Nava's vehicle, and he was directed to the secondary inspection area.

Once in the secondary area, agents discovered 8 bundles of cocaine, wrapped in tape, concealed in a firewall area of the vehicle.  The cocaine had a net weight of 8.05 kilograms

---

[2] The offense conduct as set forth herein is derived from Paragraphs 4 through 9 of Hurtado's Presentence Investigation Report ("PSR").

2

and a 86% purity.

Agents with the Drug Enforcement Administration were contacted and arrived at the scene.  Soto-Nava told agents that he had met with an individual named Hurtado and made arrangements to pick up the cocaine on October 21, 2005.  Hurtado had provided Soto-Nava with the transport vehicle and instructed him to drive down to McAllen, Texas.  He was to deliver the loaded vehicle to Hurtado in Dallas, Texas and Hurtado was going to pay him $1,500.00.  Soto-Nava further stated that he had been told he was going to be transporting marijuana and that he did not know the quantity or where it was concealed.

Soto-Nava agreed to cooperate further and to participate in a controlled delivery. On October 23, 2005, Soto-Nava made several controlled recorded telephone calls from a local motel room in Corpus Christi, Texas to Hurtado advising Hurtado that the vehicle had broken down.  Hurtado advised Soto-Nava to have the vehicle towed and looked at by a mechanic.  Hurtado also agreed to travel to Corpus Christi to ensure the return of the loaded vehicle to Dallas.  During the phone calls, Hurtado assured Soto-Nava that the cocaine would not be located and that it was in a secure compartment.  Several hours later, a vehicle approached the motel.  A male, later identified as Raul Carbajal-Adame, entered Soto-Nava's room.  Carbajal-Adame then phoned a second subject, later identified as Victor Arcos-Benitez, who arrived a short time later and began questioning Soto-Nava.  Arcos-Benitez was very observant of what was in the room and spent time looking in closets and around the room.  Arcos-Benitez then telephoned Hurtado, who arrived several minutes

later.  Upon his arrival, DEA agents entered the room and arrested all of the subjects.

In a statement to DEA agents, Hurtado stated that he had been hired by a drug distributor in Mexico, and paid $3,000.00 to organize the transportation of narcotics from Mexico.  His main role was to locate a person to transport the drugs.  Hurtado stated that he would receive the $3,000 from the driver, Soto-Nata, upon Soto-Nava's return to Dallas, Texas with the contraband.  Hurtado emphasized that he was just in charge of hiring the driver and that Soto-Nava communicated further with the actual owners of the cocaine and that Soto-Nava was aware of the final destination.

**B.     Criminal Proceedings**

On November 22, 2005, Hurtado was charged in a single-count indictment, along with co-defendants Carbajal-Adame and Arcos-Benitez, with conspiracy to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). (D.E. 21.)  On January 4, 006, Hurtado pleaded guilty pursuant to a written plea agreement.  (D.E. 32; see also January 4, 2006 minute entry.)  In exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend that he receive a three-level credit for acceptance of responsibility, and to recommend a sentence at the lowest end of the applicable guideline range.  (D.E. 32 at ¶¶ 1-2.)  The plea agreement contained a voluntary waiver of Hurtado's right to appeal and to file a § 2255 motion:

Defendant is aware that Title 18 U.S.C. §3742 affords a

4

> defendant the right to appeal the sentence imposed.  The
> defendant waives the right to appeal the sentence imposed or
> the manner in which it was determined.  The defendant may
> appeal <u>only</u> (a) a sentence imposed above the statutory
> maximum; or (b) an upward departure from the Sentencing
> Guidelines, which had not been requested by the United States,
> as set forth in 18 U.S.C. § 3742(b).  Additionally, the defendant
> is aware that Title 28, USC §2255, affords the right to contest
> or "collaterally attack" a conviction or sentence after the
> conviction or sentence has become final.  The defendant waives
> the right to contest his/her conviction or sentence by means of
> any post-conviction proceeding.

(D.E. 32 at ¶ 7) (emphasis in original).  The agreement was signed by both Hurtado and his

counsel.  (D.E. 32 at 5.)

During the rearraignment, the prosecutor outlined Hurtado's plea agreement,

including a statement that "he's told that he's waiving his rights to appeal, including his

rights under Title 28, Section 2255." (D.E. 129, Rearraignment Transcript ("R. Tr.") at 12.)

After that summary was given, Hurtado testified that the plea agreement was his, that his

attorney had read it to him in Spanish, that he asked his attorney questions about what it

meant and his attorney explained the agreement to him, that he understood it, and that he

signed it.  (R. Tr. at 12-13.)

The Court questioned Hurtado under oath at the rearraignment to ensure that his plea

was voluntary and knowing and to ensure that he understood and was voluntarily

relinquishing his appeal rights and, in particular, his right to file a § 2255 motion:

> THE COURT: . . The agreement that you have reached is an
> agreement with the Prosecution, not with the Court.  You have

5

no agreement with th e Court, no promises from me about what your sentence is. In return for your plea of guilty, the Government, you hope, will make favorable sentencing recommendations to me.  If I do not follow those recommendations, you cannot take back your plea of guilty. You will serve whatever sentence the Court decides that is lawful.  And that is especially true since you are, by this agreement, also giving up your right to appeal any sentencing decisions that I make, as well as the right to file any later petition under Section 2255 of Title 28.  That would prohibit you, this agreement prohibits you from filing such a petition, the purpose of which would be to invalidate your conviction or your sentence, in whole or in part.  Do you understand?

DEFENDANT: Yes.

THE COURT: Do you want to give up your right to appeal your sentence, as well as your right to file any later petition to challenge your conviction or your sentence?

DEFENDANT: Yes.

THE COURT: And have you discussed with Mr. Garcia, your attorney, whether or not you should do that?

DEFENDANT: Yes.

THE COURT: And is it your belief that you should give up those rights?

DEFENDANT: Yes.

(R. Tr. at 13-14.)  It is clear from the foregoing that Hurtado's waiver was knowing and voluntary.  See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report ("PSR") and sentencing occurred on March 23, 2006.  The Court sentenced Hurtado to 96 months in the custody of the Bureau of Prisons, to be followed by a five-year

supervised release term, and also imposed a $100 special assessment.  (D.E. 71, 72.)

Judgment of conviction and sentence was entered March 30, 2006. (D.E. 72.)  Consistent

with his waiver of appellate rights, Hurtado did not appeal.  Hurtado's timely § 2255 motion

was received by the Clerk on December 29, 2006. (D.E. 121.)

## III.  MOVANT'S ALLEGATIONS

In his motion, Hurtado argues that he received ineffective assistance of counsel

because his counsel pressured him to plead guilty, by telling him he could get 15 years or

more if he did not plead guilty.  (See D.E. 121 at grounds one and three.)  Second, he

claims that the government failed to disclose evidence favorable to him. (See D.E. 121 at

ground two.)  Specifically, he argues that the DEA agents never showed him the cocaine

that he was charged with conspiracy to possess.  Third, he argues that he received a

sentence that was "out of the guidelines." (See D.E. 121 at ground four.)  For the reasons

set forth herein, Hurtado's claims fail.

## IV.  DISCUSSION

### A.     28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to

vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the

district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence

in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject

to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir.

1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).  "[A] collateral challenge may not do service for an appeal."  United States v. Frady, 456 U.S. 152, 165 (1982).

## B.    Hurtado's Waiver of § 2255 Rights

The Court does not reach the merits of two of Hurtado's claims because they fall within the scope of his waiver.  See United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights).  That is, his claim that the government withheld favorable evidence and his claim that his sentence was outside the applicable guideline range are both claims that fall clearly within the scope of his waiver, and are thus barred.

His ineffective assistance claim, however, arguably falls outside the scope of the waiver.  Specifically, Hurtado claims that his counsel rendered ineffective assistance by both advising him to plead guilty by somehow pressuring him into pleading guilty. See United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"). This claim can be interpreted as a challenge to the validity of his plea, and hence his waiver.  See White, 307 F.3d at 343-44.  Thus, the Court turns to the merits of this claim.

8

**C.     Alleged Ineffective Assistance of Counsel As to Plea**

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  <u>United States v. Willis</u>, 273 F.3d 592, 598 (5th Cir. 2001).  To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial.  <u>Id</u>.  This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence.  <u>United States v. Dovalina</u>, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other.  <u>Armstead v. Scott</u>, 37 F.3d 202, 210 (5th Cir. 1994), <u>cert. denied</u>, 514 U.S. 1071 (1995) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); <u>Carter v. Johnson</u>, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").   When viewing the record as a whole, it is clear that Hurtado cannot show prejudice and thus is not entitled to relief as to his claim.

In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, Hurtado must show that, absent his counsel's deficiencies, he would have proceeded to trial.  <u>See</u> <u>United States v. Glinsey</u>, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during

9

the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)).  This is a showing that cannot be met here.  The rearraignment transcript clearly establishes that Hurtado's decision to plead guilty was his own and that it was entirely voluntary.

At his rearraignment, Hurtado testified in open court that he had received a copy of his indictment, discussed it with his attorney, that it had been read to him in Spanish, and that he had discussed the charges with his attorney. (R. Tr. at 5-6, 9.)  He testified that his attorney had made himself available to him for questions, that his attorney had answered all of his questions and followed his instructions, and that his lawyer had been a good lawyer for him. (R. Tr. at 6.)  The Court informed Hurtado of the various trial rights available to him, and he testified that he understood that if he pleaded guilty, he would be giving up those trial rights.  (R. Tr. at 6-8.)  The Court informed Hurtado of the charge against him and Hurtado testified that he understood the charge.  (R. Tr. at 9.)

Consistent with Rule 11, Fed. R. Crim P., the Court explained to Hurtado the maximum punishment that he might receive.  Specifically, the Court informed him that he could be sentenced to a maximum period of life in the penitentiary and that there was a minimum sentence of ten years in prison.  The Court explained that there was a maximum fine of $4 million, a mandatory $100 special assessment, and a supervised release term of at least five years.  (R. Tr. at 10.)  Hurtado testified that he understood.  (R. Tr. at 10.)

Significantly, Hurtado further testified that no one had threatened him or forced him to plead guilty, that no one had promised him a certain benefit if he pleaded guilty, that it was his decision to plead guilty, and that he was pleading guilty because he was guilty.  (R. Tr. at 11.)

Hurtado's sworn statements in open court are entitled to a strong presumption of truthfulness.  United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).   Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy."  United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002).  Hurtado's sworn statements at the rearraignment show that he fully understood the rights he was giving up under the plea agreement, including his right to § 2255 relief, and that no one was forcing him to plead guilty.  See Wilkes, 20 F.3d at 653.

In short, Hurtado cannot overcome his testimony at the rearraignment – which clearly established a knowing and voluntary plea – to now show that he would have insisted on going to trial but for counsel's performance.  Thus, Hurtado cannot prove the prejudice prong of the Strickland inquiry, and it is unnecessary to determine whether his counsel's performance was deficient.  His claim of ineffective assistance in the plea process fails.

Because the Court concludes that Hurtado's challenge to the validity of his plea agreement fails, the Court finds that his plea agreement and his waiver of § 2255 rights

contained therein are valid and enforceable.  Accordingly, the Court turns to the effect of his waiver of § 2255 rights on his remaining claims.

**D.     Waiver of § 2255 Rights**

As noted, it is clear from the rearraignment that Hurtado understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motion, all that is required for his waiver to be enforceable. (R. Tr. at 13-14.)  See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up).  Again, Hurtado's statements under oath are entitled to a strong presumption of truthfulness.  Wilkes, 20 F.3d at 653; Cothran, 302 F.3d at 283-84.  Those statements support the Court's conclusion that his wavier was knowing and voluntary.  As noted supra at page 8, Hurtado's remaining claims clearly fall within the scope of that waiver.

In sum, while Hurtado's ineffective assistance claim as to his plea is denied on the merits, his remaining allegations of ineffective assistance and his allegations of a speedy trial violation fall within the scope of his waiver. Therefore, they are not properly before the Court.  For these reasons, Hurtado's § 2255 motion is DENIED in its entirety.

**E.     Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Hurtado has not yet filed a notice of appeal, this

Court nonetheless addresses whether he would be entitled to a COA.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right ***and*** that jurists of reason would find it

13

debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Hurtado is not entitled to a COA as to any of his claims.  That is, reasonable jurists could not debate the Court's resolution of his ineffective assistance claim as to the plea.  Similarly, jurists of reason would not find it debatable that his valid and knowing waiver precludes consideration of his remaining claims.

## V.  CONCLUSION

For the above-stated reasons, Hurtado's motion under 28 U.S.C. § 2255 (D.E. 121) is DISMISSED WITH PREJUDICE.  The Court also DENIES him a Certificate of Appealability.

Ordered this 13th day of June, 2007.

HAYDEN HEAD
CHIEF JUDGE

14